**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

ROSSCO HOLDINGS
INCORPORATED, a California
Corporation, LEONARD M. ROSS,
An Individual, and as Trustee of the
LEONARD M. ROSS REVOCABLE
TRUST (u/t/d 12-20-85),

        Plaintiffs,

vs.

MICHAEL MCCONNELL, ESQ.,
KELLY HART & HALLMAN, LLP.,
BEARD KULTGEN BROPHY
BOSTWICK & DICKSON, LLP

        Defendants.

Civil Action No. _____

**(DEMAND FOR JURY TRIAL)**

**COMPLAINT**

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

COMES NOW, ROSSCO Holdings Incorporated, and Leonard Ross, Individually,

and as Trustee of the Leonard M. Ross Revocable Trust, Plaintiffs, complaining of the

Defendants as follows:

**I.**
**PARTIES**

1.    Plaintiff Leonard M. Ross ("Ross") is an individual residing in the County of Los

Angeles, California at all times relevant to this Complaint.

2.    At all times relevant hereto, Ross is, and was, the Settlor, the Grantor, Beneficiary,

and Trustee of Plaintiff The Leonard M. Ross Revocable Trust (u/d/t 12-20-85) (the

"Ross Trust").  The Ross Trust is now, and always has been, a "grantor trust" revocable by Ross.  Plaintiff Leonard M. Ross brings this action both in his individual capacity and in his capacity as Trustee of the Leonard M. Ross Trust (u/d/t/ 12-20-85) (the "Ross Trust").

3.      Plaintiff Rossco Holdings, Inc. ("Rossco") is a California corporation organized and existing under the laws of the State of California, active and in good standing, with its principal place of business located in Los Angeles County, California.  As set forth below, it was also the General Partner of LJR Properties, Ltd.

4.      Defendant Michael McConnell ("McConnell" or "Defendant McConnell") is and was at all times herein mentioned an attorney engaged in the practice of law as a partner in the law firm of Kelly Hart & Hallman LLP ("Kelly Hart" or "Defendant Kelly Hart"). He may be served at 201 Main Street, Suite 2500, Fort Worth, Texas 76102.

5.      Defendant Beard, Kultgen, Brophy, Bostwick & Dickerson, LLP ("Beard Kultgen") is and was at all times a law firm organized as a limited liability partnership under the laws of the State of Texas, and practicing law at 220 S. 4th St., Waco, Texas 76701.  Beard Kultgen may be served by serving one of its partners. Larry Kelly, deceased, (hereinafter "Kelly") was a partner in Beard Kultgen, and he made the negligent misrepresentation and committed the malpractice alleged herein as a representative and agent of such firm.

6.      Defendant Kelly Hart & Hallman LLP ("Kelly Hart") is and was at all times a law firm organized as a limited liability partnership under the laws of the State of Texas, or licensed and authorized to practice law in Texas, and practicing law at 201 Main Street,

Suite 2500, Fort Worth, Texas 76102.  Kelly Hart may be served by serving one of its partners.

## II.
### JURISDICTION AND VENUE

7.     Pursuant to 28 U.S.C. § 1332(a)(1), this Court has jurisdiction over this matter in that there is complete diversity of citizenship and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

8.     Venue is proper in the Northern District of Texas pursuant to 28 U.S.C. § 1965(a) as Defendants Michael McConnell, Esq., Kelly Hart & Hallman, LLP are found, and transact affairs in this District, and are subject to personal jurisdiction in this District.

## III.
### TO THE COURT

In order to provide clarity and assist the Court's understanding of this Complaint, the Plaintiff's describe other court proceedings and non-parties and their relationships:

### GLOSSARY

A)     "Agreed Order" means and refers to the Agreed Order submitted to the Texas Bankruptcy Court which was signed by the Court and which should have given the Plaintiffs the right to challenge any deficiency in the Texas Bankruptcy Case.

B)     "Agreement" means and refers to the agreement reached by the parties and which was to be set forth in the Agreed Order submitted to the Texas bankruptcy Court, and which should have given the Plaintiffs the right to challenge any deficiency in the Texas Bankruptcy Case.

C)     "California Bankruptcy Court" means and refers to Bankruptcy Case No. 02:10-BK-55951-VZ, styled In re: Rossco Holdings, Inc., Debtor, in the United States Bankruptcy Court for the Central District of California, Los Angeles Division.

D)      "NGLIC" means and refers to National Guardian Life Insurance Company, which was the owner and holder of the notes secured by the two real properties described in this Complaint.

E)      "LJR" means and refers to "LJR Properties, Ltd." owner of the Howard Johnson Hotel.

F)      "LJR Bankruptcy Case" means and refers to Bankruptcy Case No. 10-60919 styled In Re: LJR Properties, Ltd., Debtor, in the United States Bankruptcy Court for the Western District of Texas, Waco Division.

G)      LJR TRO Application means and refers to the application for temporary restraining order filed by LJR in the LJR Bankruptcy Case.

H)      "Lowry" or "Greg Lowry" was at all times relevant to the events and actions complained of herein, the attorney for the Lender or NGLIC.

I)      "Plaza" means and refers to "Rossco Plaza, Inc." the owner of the Plaza Hotel.

J)      "Ross Bankruptcy Case" or "Ross Bankruptcy" means and refers to Bankruptcy Case No. 2:10-BK-49358-VZ, styled In Re: Leonard M. Ross, Debtor, in the United States Bankruptcy Court for the Central District of California, Los Angeles Division.

K)      TRO Application means and refers to the application for temporary restraining order filed by Plaza in the Plaza Bankruptcy Case.

L)      "Rossco Bankruptcy Case" or "Rossco Bankruptcy" means and refers to Bankruptcy Case No. 02:10-BK-55951-VZ, styled In Re: Rossco Holdings, Inc. Debtor, currently pending in the United States Bankruptcy Court for the Central District of California, Los Angeles Division.

M)      "Plaza Bankruptcy Court" means and refers to Bankruptcy Case No. 10-60917, styled In Re: Rossco Plaza, Inc., Debtor, in the United States Bankruptcy Court for the Western District of Texas, Waco Division.

N)      "Two hotels" means and refers to the Howard Johnson Hotel and the Plaza Hotel.

**IV.**
**INTRODUCTION**

9.     Defendants represented Plaintiffs in bankruptcy proceedings involving the foreclosure of real property securing indebtedness on which default had been made.

10.    Plaintiffs were guarantors of the indebtedness and Plaintiff Rossco Holdings, Incorporated was liable as a General Partner of one of the defaulting borrowers. Plaintiffs, as guarantors, were liable for any deficiency existing post-foreclosure.

11.    Plaintiffs, the real parties at interest, i.e., parties with the financial capacities to pay the deficiencies, instructed the Defendants to revive Plaintiffs' rights to challenge any post foreclosure deficiency under the Texas Property Code, said rights have been waived in the underlying loan documents.

12.    The Defendants breached their duties to the Plaintiffs by failing to correctly read and understand the language in the various debt documents, debt creation documents, both notes, deeds of trust, as well as the guarantees signed by Plaintiffs together with the case law construing the Texas Property Code in order to ensure that the waiver of the Plaintiffs' rights to challenge any deficiency upon foreclosure of the two hotels had been revived by the agreements negotiated by the Defendants and set forth in an Agreed Order in the bankruptcy proceedings.

13.    As part and parcel of the performance of their duties, Defendants assured Plaintiffs that their rights to challenge the deficiencies had been secured.  Defendants assured Plaintiffs that an agreement to this effect was incorporated into the Court's order.  These representations were false.

14.     Plaintiffs relied on these representations and consented to the Agreement not contemplating that these representations would be false.   Although the Defendants drafted the language in the Agreed Order and represented to Plaintiffs that this would revive Plaintiffs' rights to challenge the deficiencies, the language did not.

15.     NGLIC foreclosed on the two hotels in separate foreclosure proceedings, and was the successful bidder for the properties.   The successful bids were substantially less than the fair market values of the two hotels.

16.     As guarantors, both Ross and Rossco filed bankruptcy.   NGLIC filed proofs of claims in both bankruptcies to collect the deficiencies.   Plaintiffs responded within their respective bankruptcies with adversary proceedings to challenge the deficiencies. NGLIC responded with Motions for Summary Judgment advising the Bankruptcy Court that the guarantors' rights to challenge the deficiencies had been waived in the underlying loan documents, and that these had not been revived by the earlier Agreement in the underlying bankruptcies of the primary debtors.   NGLIC prevailed on its Motions, and the full deficiencies were allowed in both the Ross and Rossco bankruptcies.

17.     Plaintiffs have been damaged in an amount equal to the differences between the deficiencies existing after the foreclosures, and the true value of the properties on foreclosure date in excess of the amounts bid in at the foreclosure sales.

## V.
### CONDITIONS PRECEDENT

18.     All conditions precedent have been performed or have occurred.

## VI.
### BACKGROUND FACTS

19.     Plaintiffs, at all times pertinent hereto, were guarantors of indebtedness secured by two hotels in Central Texas owned by LJR and Plaza respectively.  Both LJR and Plaza defaulted on the indebtedness and were placed in bankruptcy.  Defendants were retained by these entities to represent them and interested parties in the pending bankruptcy proceedings in the Western District of Texas.

20.     Plaintiff Ross executed Defendants' retention contracts in his representative capacity and was an individual guarantor of these contracts.

21.     Initially the Defendants did not represent Plaintiffs, but took on such representation following the execution of the retainer agreements.  Specifically, the Defendants undertook to represent Plaintiffs' interests as described below.  Defendants thereby caused Plaintiffs to rely on Defendants' counsel and advice.  As set forth in Exhibit 1, the Court found that Defendant Kelly represented Plaintiff Ross individually, and that Defendant McConnell represented Plaintiff Rossco Holding, Inc.  Also, see the text of email correspondence set forth below.

22.     Defendant Kelly was board certified in bankruptcy law and held himself out to the general public as being uniquely and specially competent to give advice and counsel as to bankruptcy matters as a partner in the law firm of Beard Kultgen Brophy Bostwick & Dickson, LLP.

23.     Defendant McConnell is board certified in bankruptcy law and held himself out to the general public as being uniquely and specially competent to give advice and counsel as to bankruptcy matters as a partner in the law firm of Kelly Hart & Hallman, LLP.

24.     As part and parcel of their representation, Defendants were charged with reinstating the rights of Plaintiffs to challenge any deficiency on foreclosure of the hotels pursuant to the Texas Property Code.

25.     The Texas Property Code affords a guarantor of a note secured by real estate and any other person against whom recovery of a deficiency is sought the opportunity to challenge any deficiency remaining after a foreclosure sale.  This right had been waived in the loan documents evidencing the indebtedness secured by the two hotels, including in the guarantees executed by Plaintiffs.

26.     The bankruptcy proceedings provided the Plaintiffs an opportunity to revive Plaintiffs' right to challenge any deficiency.  That is, bankruptcy courts are courts of equity, and by virtue of the equitable powers of a bankruptcy court a Bankruptcy Court order is able to modify the language in the underlying loan documents.  The language waiving the right to challenge the deficiency could be altered or struck to the end that Plaintiffs would be allowed to assert their rights under the Texas Property Code and challenge the deficiency.

27.     In October, 2010, the lender posted the two hotels for foreclosure.  Foreclosure was set for Tuesday, November 2, 2010, the first Tuesday of the month following posting.

28.     Ross, LJR, and Plaintiff Rossco Holdings, Inc. were represented by Defendant Michael A. McConnell and the law firm of Kelly, Hart and Hallman, LLP in the bankruptcy proceedings.

29.     Ross, Plaza and Plaintiff Rossco Holdings, Inc. were represented by Larry Kelly of the law firm of Beard, Kultgen, Brophy, Bostwick, Dixon and Squires, LLP in the bankruptcy proceedings.

30.     On or about October 20, 2010, in response to a notice of foreclosure, Plaza filed its Original Complaint and Request for Injunctive Relief in its bankruptcy case to stop the foreclosure of the Plaza Hotel it owned.

31.     On or about October 29, 2010, in response to a notice of foreclosure, LJR filed in its Bankruptcy case its Original Complaint and Request for Preliminary Injunctive Relief and its Application for Temporary Restraining Order and Brief in Support thereof to prevent the foreclosure of the Howard Johnson's hotel it owned.

32.     Following the filing of the LJR TRO Application and the Plaza TRO Application, Defendants, acting as counsel for Plaintiffs, commenced settlement discussions with Greg Lowry, NGLIC's counsel, to ascertain if a compromise of the Applications for TRO was possible.   A proposed settlement was reached with NGLIC on or about November 1, 2010.

33.     At all relevant times during the negotiations leading up to the proposed settlement, Plaintiffs, by and through Plaintiff Ross, communicated to Defendants their insistence that NGLIC agree to allow the Plaintiffs' the ability to challenge the amount and validity of any deficiency claim.

34.     The foregoing was communicated to Kelly and McConnell in order to assure that Plaintiffs would have the right to prove valuation for the two hotels so as to offset and possibly eliminate any deficiency claim which might be asserted against them as provided by the Texas Property Code, but which had been waived in the underlying loan and guaranty documents.   These communications were primarily by email with all Defendants privy to the correspondence.

35.     At 10:45 a.m., on Saturday, October 30, 2010, Defendant Kelly wrote the following to Plaintiff Ross and copied Defendant McConnell:

> "It is Saturday at about 10:35 a.m.
> I just spoke with Greg Lowry.
> Here is what they are willing to do.
>
> 1.     They would agree to pass the foreclosure scheduled for this coming Tuesday, November 2, 2010.
> 2.     The 2 debtor entities, **guarantors** and officers, agents, etc all agree that unless some other arrangement is agreed to in writing by the parties, not to oppose a reposting and foreclosure for December. (emphasis ours)
> 3.     They do want the $26,000 paid by 4:00 p.m. on Monday
> 4.     All parties otherwise reserve any and all rights regarding other issues including claims of deficiency or defenses thereto (they just could not decide to agree on an amount at this time)
>
> Simple
>
> I think they would do this as an Agreed Order on the Complaint we filed. Essentially the Order would deny all relief except as stated herein then contain these terms.
> I told him we would respond if possible via email this weekend
> Mr. Lowry plans on being in his office tomorrow."

36.     By including "guarantors" in the foregoing email, Defendant Kelly confirmed his representation of Rossco, Ross and the Ross Trust.

37.     At 11:03 a.m. on October 30, 2010, Defendant McConnell wrote:

"This is an excellent deal.  Much better than anything we could get in court.  Once Leonard (Plaintiff) gives the ok, I will draft a simple Agreed Order."

38.     By endorsing the deal described in the forgoing Kelly email, McConnell ratified his representation of Rossco, Ross, and the Ross Trust.

39.     At 9:43 a.m. on Sunday, October 31, 2010, Lowry sent by electronic mail a draft agreed order to resolve the TRO dispute.  It was sent to both Defendant Kelly and Defendant McConnell.  The email stated the following:

"Attached is a draft order, subject to review and approval by National Guardian Life Insurance Company and all parties in form and substance, with respect to a one-time pass of the foreclosure sale.  Please let me know today/first thing Monday morning.  We don't plan to spend extensive time negotiating this issue."

The parties referenced in the email included the Plaintiffs.

40.     At 12:28 p.m. Defendant Kelly wrote,

"Mr. Ross thinks you are trying to avoid his right or the makers right to argue the deficiency issue.  He wants to make sure this is not being waived."

41.     At 12:43 p.m. Lowry replied stating:

"Not intended.

This order is not a finding, determination, admission, or order regarding the existence, amount or assertion of, or any defenses to, any alleged indebtedness or deficiency claim and it does not have preclusive effect thereon."

42.     At 12:49 p.m., Defendant McConnell wrote:

"The orders prepared by Lowry should work fine provided that it is clarified that the reservation of rights is mutual."

43.     At 1:34 p.m. in response, Plaintiff Ross sent an email to Kelly and McConnell stating in part the following:

> "THESE ORDERS PREPARED BY NGLIC ARE NO GOOD ALL ONE SIDED DOESN'T EVEN ACKNOWLEDGE OR PRESUMABLY ALLOW DEBTORS AND GUARANTORS TO BE ABLE TO CHALLENGE ANY DEFICIENCY ETC.   PLEASE SEE THE LANGUAGE OF MY EMAILS THIS MORNING FOR INCLUSION OF VARIOUS LANGUAGE. REALLY IMPORTANT." (emphasis in the original)
>
> OBVIOUSLY, MUST BE RECIPROCAL RESERVATION OF RIGHTS, ETC.  AND, CHALLENGING FORECLOSURE DEFICIENCY MEANS "… PREVENTING..CHALLENGING…EXERCISE OF RIGHTS AND REMEDIES BY NATIONAL GUARDIAN…"

44.     In response, at 1:41 p.m. Defendant Kelly wrote:

> "He (Lowry) has agreed to add language that all rights regarding deficiency issues are reserved to makers and guarantors of the notes.  We can make him add this.  I am seeing if we can confer with him sometime immediately on Monday a.m."
>
> I am seeing if we can confer with him sometime immediately on Monday a.m."

45.     By stating "that all rights regarding deficiency issues are reserved to…guarantors," Kelly again confirmed his representation of the guarantors.

46.     The statement, "he has agreed to add language that all rights regarding deficiency issues are reserved to makers and guarantors of the notes," was either a misrepresentation, or, despite such representation, both Kelly and McConnell failed in their professional responsibilities to ensure that this occurred.

47.     Shortly thereafter Plaintiff Ross wrote an email to McConnell with a copy to Kelly stating:

"Michael/Clay: VERY IMPORTANT THAT THE AGREED UPON ORDER INCLUDES:

PARAGRAPH 7 FROM THE BOB YASPAN PREPARED ORDER FILED RE PMB (WILL FORWARD TO YOU IN CASE YOU DO NOT HAVE IT). INSERT "ON THE PART OF DEBTOR(S)" (not sure if you are doing one or two orders…thus Debtor or Debtors).

PARAGRAPH 6 FROM THE DRAFT SETTLEMENT AGREEMENT LARRY KELLY FORWARDED TO NGLIC/LAWRY LAST WEEK BUT INSERT AFTER "DEFICIENCY JUDGMENT"…"AGAINST GUARANTORS AND GUARANTORS SHALL BE ENTITLED… (I WILL FORWARD IT TO YOU IN CASE YOU DO NOT HAVE IT).

FYI: NGLIC SHOULD BE OK WITH THE ABOVE AS NGLIC KNOWS THE TWO DEBTORS WON'T HAVE ANY ASSETS, NGLIC ONLY INTENDS TO LOOK TO THE GUARANTORS IF NGLIC PURSUES A DEFICIENCY CLAIM.

INSERT: DISCHARGE ALL OBLIGATIONS ON THE PART OF DEBTOR(S) DERIVING FROM OR RELATING TO…
(This goes in ORDER as well as the above comments) (emphasis in original)

48.     At 4:49 a.m. on Monday November 1, 2010, Defendant McConnell wrote to

Lowry stating:

"Greg: Please add the following ordering paragraph in your proposed orders:

        "IT IS FURTHER ORDERED that neither the Debtor nor any guarantor is restricted in any way by the terms of his Order or the agreement of the parties from challenging the validity or amount of any deficiency claim sought by NGLIC following a foreclosure." Larry may have additional language but, with that addition, I'm ok with your drafts.

I'm leaving for Austin shortly but you may reach me on my cell phone at 817.271.6603 while I'm in transit. It's my understanding that Judge Gargotta has set us for 1:30 in Austin.

Best regards,

Michael A. McConnell, Partner"

49.    Prior to the TRO hearing set for November 1, 2010, Kelly informed Ross by electronic mail, copied to McConnell, that Plaintiffs'

"right to challenge a deficiency is statutorily granted so you will have it."

50.    But for the advice of Defendants, Plaintiffs would not have accepted the agreement.

51.    Shortly after commencing the TRO Hearing, upon hearing from Lowry that the parties had reached an agreement for resolution of the TRO applications and deficiency issues, the Texas Bankruptcy Court briefly adjourned the hearing to permit the Plaintiffs and the Lenders to finalize the terms of an agreed order that embodied their settlement. Counsel for the respective parties finalized the Agreed Order, which was entered by the Texas Bankruptcy Court on November 1, 2010.

52.    As pertinent here, the final paragraph on the third page of the Order incorporating the language requested by McConnell states the following:

"Ordered that "(i) neither the Debtor nor any guarantor is restricted in any way by the terms of this Order or the agreement of the parties to this Order from challenging the validity or amount of any deficiency claim sought by National Guardian following a foreclosure sale…"

This is the exact language requested by McConnell in his email set out in paragraph 48 above.  The Defendants represented to Plaintiffs that they would have the right to challenge the deficiencies.  These representations were false.  Plaintiffs justifiably relied on these representations by consenting to the Agreement as represented by

Defendants, and by permitting the withdrawal of their respective requests for temporary restraining orders.

53.     At the time of the TRO Hearing, Defendants advised Plaintiffs that the Agreed Order included language confirming that (1) Plaintiffs would have the ability to challenge the amount and validity of any deficiency claim; and (2) that Plaintiffs would be able to prove valuation for the two hotels so as to offset and possibly eliminate any deficiency claim which might be asserted.

54.     Plaintiffs were informed by Defendants that the Agreed Orders were consistent with Plaintiffs' instructions. These representations were false.  Plaintiffs justifiably relied on these representations by consenting to the Agreement and withdrawing their request for temporary restraining orders.

55.     The Order incorporating the agreement also included the following language:

> "National Guardian: (i) retains and reserves all rights and remedies under
> the Loan Documents and applicable law"

This language is found in the middle of the second full paragraph of the Order, and was either overlooked or not considered substantive by Defendants Kelly and McConnell. In the exercise of their professional duties and responsibilities, Defendants should have required that this language be modified to except out that portion of the loan documents and guarantees wherein Plaintiffs waived their rights to challenge the deficiencies.

56.     Plaintiffs would not have settled the matter, withdrawn their applications for TRO's, nor would they have agreed to the entry of the Agreed Order, but for assurances from Defendants that the Order setting forth the terms of the settlement accurately

established Plaintiffs' understanding of such terms.   Plaintiffs relied on the representations of Defendants that they would be able to challenge the deficiencies post foreclosure, and manifested this reliance by communicating to the Defendants their consent that the Defendants proceed to enter the Order.

57.    Based on the foregoing, Kelly advised Plaintiffs that they would be able to challenge the deficiencies.   McConnell concurred with the foregoing, and ratified and confirmed such advice by his email to Lowry as set forth in paragraph 48.   By undertaking to instruct Lowry to include this language into the Agreed Order Defendants McConnell and Kelly undertook the professional responsibility to ensure that the Plaintiff's supposedly newly revived rights to challenge any deficiency would be approved by the bankruptcy courts, and survive any future challenges by NGLIC.  Thus the Defendants had a duty to ensure that Plaintiff's rights to challenge any deficiency were protected, and not abridged by or trumped by any other language in the Order or Loan Documents or guarantees, or case law.

58.    On Monday, November 8, 2010, one week after the Bankruptcy Court Order was entered, Defendant Kelly, continuing to operate under the assumption that Plaintiffs would be allowed to challenge the deficiencies, wrote to lenders' counsel the following:

"Greg:

Here is brief update.

1.    The San Antonio group is still puttering around with numbers.  Their real problem is the delay inherent in getting approval from the franchisors they want.   You have to spend $10,000 for the report and then the franchisors make a list of what has to be fixed, modified, added or

removed.  Then that work has to be done before you get a franchise.  So up front cost usually means delay.

2.      The entity that wants to buy the Note wants to pay cash and buy "the Note(s)".  They are not interest in carving off rights to deficiencies.

3.      Therefore, I doubt a deal can be made unless they acquire all rights. Ross cannot be in the position of owing all the money to them AND owing your client some extra money.

4.      As to deficiency, we know the principal of the company seeking to acquire the Note will testify how they came to an opinion of value.  It is a duress situation and that does not meet the definition of FMV, thus the actual value is or should be more.    The recent appraisal is around $12,000,000.  I think all courts look askance at appraisals, but it is higher than NGLIC's appraisals.

5.      I think Ross would agree to some deficiency number.  I think cash for NGLIC is better than foreclosure.  Once foreclosed they still have empty building, security issues, potential red-tag which could then require upgrading to current code specifications, finding a buyer for each property, potentially having to fund some of the purchase price and thus still have the financial risk of repayment.

6.      You are right, Mr. Ross made an offer.  If you get $7.5 million he would agree to $750,000 deficiency.

7.      He is not going to bid against himself.

I wanted to at least bring you up to speed on what is going on.
The guy that is the principal of prospective Note Purchaser (sorry in am leaving out the name, but I don't have it here and frankly I cannot remember it), is a guy that flies back and forth from Hawaii in one day; leaves for Costa Rica on a business trip and returns the next day; was scheduled to fly from California to Texas and look over the two properties, then on to Chicago that night.

He is difficult to tie down.
This deal is not that large for him.
He has advised that he does not want to buy Notes "with strings attached."

Thanks for your time."

59.     On December 7, 2010, NGLIC, through the substitute trustee appointed under the LJR Deed of Trust, caused the Howard Johnson Hotel owned by LJR to be sold at a public auction.

60.     NGLIC purchased the Howard Johnson Hotel for a credit bid of $1,850,000 against $5,373,003.09 owed.

61.     On December 7, 2010, NGLIC, through the substitute trustee appointed under the Plaza Deed of Trust caused the Plaza Hotel to be sold at a public auction.

62.     NGLIC purchased the Plaza Hotel for a credit bid of $2,150,000 against $4,669,361.96 owed.

63.     NGLIC asserted deficiency claim of $3,523,003.09 ($5,373,003.09, minus the $1,850,000 credit bid advanced by NGLIC) at the LJR Foreclosure.

64.     NGLIC asserted deficiency claim of $2,145,330.24 ($4,669,361.96, minus the $2,150,000 credit bid advanced by NGLIC) at the Plaza Foreclosure against Plaintiffs.

65.     On January 28, 2011, NGLIC filed a proof of claim ("POC No. 32") in the Ross bankruptcy case asserting: (i) a deficiency claim under the LJR Loan Documents in the amount of $3,523,003.09; and (ii) a deficiency claim under the Plaza Loan Documents in the amount of $2,519,361.96.

66.     On December 13, 2010, NGLIC filed a proof of claim ("POC No. 6") in the Ross bankruptcy case asserting: (i) a deficiency claim under the LJR Loan Documents in the amount of $3,523,003.09; and (ii) a deficiency claim under the Plaza Loan Documents in the amount of $2,519,361.96.

67.     On February 25, 2011, Plaintiff Rossco and Plaintiff Ross, in their respective Chapter 11 cases, each filed a Joint Motion for (1) Order Disallowing: (A) Proof of Claim No. 32 Filed by National Guardian Life Insurance Company in the Chapter 11 Case of Leonard M. Ross; and (B) Proof of Claim No. 6 Filed by National Guardian Life Insurance Company in the Chapter 11 Case of Rossco Holdings, Inc., (2) Order Valuing Real Property; and (3) Order Consolidating Claim Objection with Adversary Proceeding, with supporting pleadings, objecting to the NGLIC Proofs of Claim on the grounds stated therein (the "Claim Objection"), including, but not limited to, challenges to the amounts asserted in the Lender's Proofs of Claim as deficiencies.

68.     On March 3, 2011, Plaintiff Rossco and Plaintiff Ross, in their respective Chapter 11 cases, each filed the Complaint for Wrongful Foreclosure against NGLIC, initiating adversary proceedings in their respective cases.  These were consolidated into a single adversary proceeding together with the Claim Objection (the "Adversary Proceeding"), by an order entered by the California Bankruptcy Court on March 14, 2011.

69.     On June 21, 2012, fifteen months later, the Trustee and Plaintiffs filed a Joint Motion for Partial Summary Adjudication (the "Debtors' Summary Judgment Motion"). The Lender filed an opposition to the Debtor's Summary Judgment Motion on July 12, 2012.  In the Debtors' Summary Judgment Motion, Plaintiffs argued, in part, that the wording in the Agreed Orders provided that the Plaintiffs could assert any defenses to the Lender's Proofs of Claim asserting the deficiencies, including rights arising under the Texas Property Code  to challenge the amount of the deficiencies.

70.    On July 24, 2012, NGLIC filed its Defendant's Notice of Motion and Motion for Summary Judgment Pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure (the "Summary Judgment Motion").   A brief in opposition to the Summary Judgment Motion was filed on August 16, 2012, and NGLIC filed a reply brief on August 23, 2012. In NGLIC's Summary Judgment Motion, it argued, in part, that Plaintiffs' defenses arising under the Texas Property Code and Texas common law as to any deficiency claims asserted by NGLIC had been waived in the loan documents including the guarantees, and that the wording in the Agreed Order set forth in paragraph 52 did not revive those defenses.

71.    On September 5, 2012, the California Bankruptcy Court held a hearing on both the Debtors' Summary Judgment Motion and the NGLIC Summary Judgment Motion. Following the hearing, the California Bankruptcy Court ruled that it would deny the Debtors' Summary Judgment Motion and grant the NGLIC Summary Judgment Motion, finding that the Plaintiffs' defenses to NGLIC's deficiency claim had been waived by language in the loan documents including the guarantees, and that the wording in the Agreed Orders did not revive those defenses (the "Summary Judgment Ruling").   It was at this time that Plaintiffs learned they had been misled by the Defendants and that the Defendants had committed legal malpractice.

72.    The Bankruptcy Court stated, in relevant part, at the hearing regarding the lender's Motion for Summary Judgment:

> "In reading the language in those various debt documents, debt creation documents, both notes, deeds of trust, as well as the guarantee signed by Mr. Ross, I conclude as a matter of law that LJR, Rossco Plaza, Rossco

> Holdings, Ross, all expressly waived all rights to challenge the validity and extent of the foreclosure sales as well as the amounts of the deficiency claims arising from those foreclosure sales, under Texas law, as Texas – under Texas law, as those – as that law has been construed by the courts in the State of Texas as well as four federal courts construing Texas law."

> "…with regards to whether or not orders entered by the Bankruptcy Court either revived or created any such rights to challenge the validity and extent of those foreclosure sales or the deficiency claims, I conclude as a matter of law that those – the language in those orders do not in any way revive or create any such rights."
> (Rptr. Tr. 9/6/2012 p.27 1.20 – p.28 1.5; p.28 11.9-15.)

73.     On October 9, 2012 the California Bankruptcy Court entered an order granting the NGLIC Summary Judgment Motion, and ordering that Claim 6 and Claim 32 are allowed."

74.     As a result of the Summary Judgment Ruling, the Lender held an allowed claim in the Ross bankruptcy case in an amount asserted to be at least $6,424.820.00, and an allowed claim in the Rossco bankruptcy case in an amount asserted to be at least $3,589,000.00, although the claim against Rossco was duplicative of a portion of the claim against the Ross bankruptcy estate.

75.     On or about October 12, 2012, Plaintiff Ross and Plaintiff Rossco each received a confirmation in their respective Chapter 11 cases as reorganized debtors, upon the contemporaneous effectiveness of their respective, but related, plans of reorganization.

76.     On or about January 30, 2013, the California Bankruptcy Court approved a settlement between Plaintiff Ross and Plaintiff Rossco, on the one hand, and NGLIC, on the other hand, by which POC No. 32 was allowed in the Plaintiff Ross Chapter 11 case

in the amount of $4,775,000, and POC No. 6 was allowed in the Plaintiff Rossco Chapter 11 case in the amount of $3,000.000.

77.     Plaintiffs had sought to challenge the deficiencies in their respective bankruptcies. The order of October 9, 2012, described in paragraph 63 deprived them of this expected right.

78.     Had Plaintiffs' right to challenge the deficiencies been revived, Plaintiffs would more than likely than not prevailed and been successful in reducing if not eliminating the resulting deficiencies.  That is, the Plaintiffs' challenges more likely than not would have demonstrated by a preponderance of the evidence that the deficiencies should be reduced if not eliminated altogether.

79.     Plaintiffs have been damaged in an amount equal to the difference between the deficiencies paid to the lender and such lesser amount, if any, Plaintiffs would have had to pay pursuant to their guarantees if they had been allowed to assert their rights under the Texas Property Code.

### COUNT ONE
### VII.
### NEGLIGENT MISREPRESENTATION

80.     The elements of negligent misrepresentation under Texas law are that (1) the Defendant in the course of his business; (2) supplied false information for the guidance of others; (3) without exercising reasonable care or competence in communicating the information; (4) the Plaintiff justifiably relied on the information; (5) proximately causing the Plaintiffs injury.

81.     The duty arises when (1) the attorney is aware of the non-client and intends that the non-client rely on the representation; and (2) the non-client justifiably relies on the attorney's representation of a material fact.

82.     Kelly and McConnell, and therefore all Defendants, were aware of Plaintiffs' interests as guarantors of the indebtedness and Rossco's status as the general partner of LJR.  As guarantors Plaintiffs' only financial exposure in these matters was as to any deficiencies.

83.     Plaintiffs relied upon the Defendants misrepresentations that the Agreement would allow Plaintiffs to challenge the deficiencies.

84.     Defendants made the misrepresentations in the course of their business when they advised the Plaintiffs that the right to challenge any deficiency had been revived.

85.     Plaintiffs were guided by the Defendants' misrepresentations.  That is, Plaintiffs' assented to the dismissal of their applications for temporary restraining orders in exchange for the perceived agreement, proved false, that NGLIC had agreed to allow Plaintiffs to challenge the deficiencies.

86.     Defendants did not exercise the reasonable care or competence expected of board certified bankruptcy attorneys in bankruptcy proceedings to assure that Plaintiffs would be able to challenge the deficiencies.

87.     As a result of Defendants' failures and negligent misrepresentations, Plaintiffs were damaged by their inability to challenge the deficiencies.

## COUNT TWO
### VIII.
### MALPRACTICE

88.     Plaintiffs Ross, individually and as Trustee of Ross Trust, and Rossco would show that subsequent to the execution of the retention agreements with Kelly and McConnell, that Defendants commenced to represent Plaintiffs Ross, individually and as Trustee of Ross Trust, and Rossco as to their guarantees of the underlying indebtedness and Rossco as General Partner of LJR.   Therefore, the negligence, actions and inactions of Defendants including, but not limited to, failing to fulfill their duty to ensure that the Agreed Order properly protected Plaintiffs, did what the Defendants represented to the Plaintiffs that the Agreed Order would do, and properly reflected the understanding of Plaintiffs as expressed by the Defendants that (1) Plaintiffs would have the ability to challenge the amount and validity of any deficiency claim; and (2) Plaintiffs would be allowed to prove valuation for the two hotels so as to offset and/or eliminate any deficiency claim which might be asserted by the lender on the two hotels, Plaintiffs  more than likely would not have had any liability for most, if not all, of the deficiency claims. That is, Plaintiffs would have been able to demonstrate by a preponderance of the evidence that the actual deficiencies were lower than those claimed by NGLIC.

89.     The Defendants owed Plaintiffs a general duty of care exercised by a reasonably prudent attorney in similar circumstances.  In the circumstances of this case the specific standard of care due required the Defendants to review and understand the various debt documents, debt creation documents, both notes, deeds of trust, as well as the guarantee signed by Ross, Rossco and Ross as trustee of the Ross Trust together with the case law

construing Texas Property Code § 51.005 to ensure that, taken as a whole, the agreements set forth in the Agreed Order actually revived the Plaintiffs previously waived ability to challenge any deficiencies and that such revival of rights would be upheld by the Courts and survive any challenge by NGLIC that the revival of right to challenge the deficiency had not been revived.

90.     Defendants, jointly and severally violated the specific standard of care when the Agreement set forth in the Agreed Order (1) did not allow Plaintiffs to challenge the amount and validity of any deficiency claim; (2) did not allow Plaintiffs to prove valuation for the two hotels so as to offset and/or eliminate any deficiency claim which might be asserted by the lenders; (3) was not upheld by the courts; and (4) was not able to withstand a challenge by NGLIC.

91.     Defendants failed to inform and advise Plaintiff Ross and Plaintiff Rossco that Plaintiff Ross and Plaintiff Rossco would not have the right to challenge the validity of and the amount of any deficiency based on (1) a foreclosure by NGLIC of the two hotels, (2) Plaintiff Ross and Plaintiff Rossco would not have any defenses to the guarantees, (3) Plaintiffs would not be able to prove valuation for the two hotels so as to offset and/or eliminate any deficiency claim which might be asserted by NGLIC, (4) NGLIC would obtain a judgment against Plaintiff Ross in the amount of $6,042,365.05, settled for $4,775,000.00, and (5) NGLIC would obtain a Judgment against Plaintiff Rossco in the amount of $3,144,226.48, settled for $3,000,000.00.

92.     Defendants misinformed Plaintiffs as to important legal matters relevant to foreclosure related matters and the related Ross Chapter 11 Proceeding and matters, and the Rossco Chapter 11 proceeding and matters.

93.     As a direct and proximate cause of the negligent acts and omissions of the Defendants, NGLIC was able to obtain allowed claims in the California Bankruptcy Court for the full amount of its own deficiency claims, hereby damaging Plaintiff Ross by preventing an offset in an amount equal to or less than $4,775,000.00 plus interest thereon, and thereby damaging Plaintiff Rossco by preventing an offset in an amount equal to or less than $3,000,000.00, plus interest thereon.

## IX.
### DEMAND FOR JURY TRIAL

94.     Pursuant to Fed.R.Civ.P. 38, Plaintiffs demand a jury trial.

### PRAYER

**WHEREFORE,** Plaintiffs Rossco Holdings, Incorporated, Leonard M. Ross, Individually, and as Trustee of the Leonard M. Ross Revocable Trust pray that Defendants Michael McConnell, Esq, Kelly Hart & Hallman, LLP, and Beard Kultgen Brophy Bostwick & Dickson, LLP, be summoned to appear and answer herein, and that on final trial hereof the Court enter judgment for the Plaintiffs that grants Plaintiffs the following legal and equitable relief:

1.     A finding that the Defendants, all or any one of them, made a negligent misrepresentation to Plaintiffs or any one of them;

2.     A finding that the Defendants, all or any one of them, committed malpractice as to Plaintiffs or any one of them;

3. That the Defendants are jointly and severally liable to Plaintiff Leonard M. Ross individually and as Trustee of the Ross Trust for damages in an amount to be determined upon final trial;

4. That the Defendants are jointly and severally liable to Plaintiff Rossco Holdings, Incorporated, for damages in an amount to be determined upon final trial;

5. Pre-judgment interest at the highest rate permitted by law;

6. Post-judgment interest at the highest rate permitted by law;

7. Costs of Court; and

8. For such other and further relief at law or in equity to which Plaintiffs may show themselves to be justly entitled.

Respectfully submitted;

L.M. Ross Professional Law Corporation

Leonard M. Ross
California State Bar No. 43859
Eideh M. Toubi
California State Bar No. 188699
L.M. Ross Professional Law Corporation
1642 Westwood Blvd, Suite 300
Los Angeles, CA 90024
lmross@rossco.com
(424) 789-8707 – Telephone
(42 4) 789-8709 – Facsimile


LAW OFFICE OF THOMAS P. JACKSON
(Local Counsel)

Thomas P. Jackson//s

Thomas P. Jackson
State Bar No. 10496600

5430 Glen Lakes Drive, Suite 230
Dallas, Texas  75231
tpj@dfwlawyer.com
(972) 387-0007 - Telephone
(972) 584-6159 - Facsimile

**COUNSEL FOR PLAINTIFFS**

**Exhibit 1**



**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: November 01, 2010.**

*Craig A. Gargotta*
_____
**CRAIG A. GARGOTTA**
**UNITED STATES BANKRUPTCY JUDGE**

## IN THE UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **ROSSCO PLAZA, INC.** | § | Case No. 10-60917 |
| | § | |
| Debtor | § | Chapter 11 |
| | § | |
| **ROSSCO PLAZA, INC.,** | § | |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | ADVERSARY NO. 10-06024 |
| | § | |
| **NATIONAL GUARDIAN LIFE** | § | |
| **INSURANCE,** | § | |
| **Defendant** | § | |

### ORDER

Came on for consideration the Application for Temporary Restraining Order and Brief in Support Thereof ("**Application**") filed by Rossco Plaza, Inc. ("**Debtor**"). National Guardian Life Insurance Company, individually and as applicable for any participant (collectively, with any assignee, "**National Guardian**") opposes the Application but has agreed to the terms of this

**ORDER**                  **PAGE 1**

Order. Leonard M. Ross appeared through his counsel, Larry Kelly and agreed on the record to the terms of this Order. The Leonard M. Ross Revocable Trust ("**Trust**") represented by Leonard M. Ross also agreed to the terms of this Order. Rossco Holdings, Inc., Colony Lodging, Inc., WM Properties, Ltd., Monte Nido Estates, LLC and LJR Properties, Ltd. (collectively, the "**Affiliates**") appeared through counsel for the Debtor and agreed on the record to the terms of this Order. The Court, having considered the Motion, and the agreements of the parties listed above, finds cause to enter this Order. Accordingly, it is:

ORDERED that the Debtor is authorized and directed to pay to National Guardian $26,000 (the "**Payment**") by wire transfer no later than 10:00 a.m. central time on Tuesday, November 2, 2010 (the "**Deadline**") to reimburse National Guardian for the expense incurred pursuant to the Loan Documents[1] of maintaining security and oversight for the Collateral[2] through November 30, 2010. In the event the Payment is not made by the Deadline, National Guardian may proceed with the foreclosure sale of the Collateral on November 2, 2010, and with all of its other rights and remedies under the Loan Documents and applicable law. If the Payment is made by the Deadline, National Guardian shall pass, on a one time basis, the foreclosure sale of the Collateral on November 2, 2010, in reliance upon the agreements and terms in this Order, provided however National Guardian: (i) retains and reserves all rights and remedies under the Loan Documents and applicable law, (ii) has no other obligation to forebear, and (iii) may post the Collateral in November 2010 (or at any time thereafter, at National Guardian's discretion) for a foreclosure sale of the Collateral to occur in December 2010 (or at

---

[1] The term "Loan Documents" means, collectively, the Deed of Trust Note dated July 27, 2005, executed by the Debtor payable to National Guardian in the original principal sum of $4,600,000.00 ("Note"), a Deed of Trust and Security Agreement and Fixture Filing Statement dated July 27, 2005, executed by the Debtor, an Assignment of Rents and Leases dated July 27, 2005, executed by the Debtor, and any modification agreement, work- out agreement and other agreement or instrument governing or securing the Note or the loan evidenced by the Note.
[2] The term "Collateral" means all real property, personal property and other property that secures or is collateral for the Note or the obligations and indebtedness owed under the Loan Documents.

any time thereafter, at National Guardian's discretion), under the Loan Documents and applicable law. It is further

ORDERED that the Debtor, Ross (individually and in any other capacity), the Trust, and the Affiliates agree, and are hereby directed by this Court, to take no action to delay, prevent, challenge, enjoin, restrain or impair any further foreclosure sale of the Collateral by National Guardian (including any foreclosure sale of the Collateral to occur in December 2010) or the exercise of rights and remedies by National Guardian with respect to the Debtor. It is further

ORDERED that this Court's Order entered September 30, 2010, terminating the automatic stay remains in full force and effect and the automatic stay remains terminated. National Guardian may exercise any and all rights and remedies under the Loan Documents and applicable law against Debtor and the Collateral including, without limitation, posting the Collateral in November 2010 for a foreclosure sale of the Collateral in December 2010. National Guardian is also authorized, but not directed, to continue to take action to safeguard and secure the Collateral. It is further

ORDERED that the Application is denied, except as set forth herein. No further relief shall be granted to Debtor with respect to the Application or Debtor's "Original Complaint and Request for Injunctive Relief" filed commencing this adversary proceeding. It is further

ORDERED that: (i) neither the Debtor nor any guarantor is restricted in any way by the terms of this Order or the agreement of the parties to this Order from challenging the validity or amount of any deficiency claim sought by National Guardian following a foreclosure sale, and (ii) National Guardian is not restricted in any way by the terms of this Order or the agreement of the parties to this Order from asserting a deficiency claim following a foreclosure sale or otherwise. It is further

ORDERED that this Order is effective upon entry and any stay of this Order is waived, there being no good reason for delay.

# # #

JS 44   (Rev. 09/11)

# CIVIL COVER SHEET

The JS 44 civil coversheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Rossco Holdings Incorporated, a California Corporation, Leonard M. Ross, an Individual, and as Trustee of the Leonard M. Ross Revocable Trust (u/t/d 12-20-85)

## DEFENDANTS
Michael McConnell, Esq., Kelly Hart & Hallman, LLP., Beard Kultgen Brophy Bostwick & Dickson, LLP

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Tarrant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Leonard M. Ross; Eideh M. Toubi; L.M. Ross Professional Law Corporation,1642 Westwood Blvd., Suite 300, Los Angeles, CA 90024; Telephone No. 424-789-8707

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government Plaintiff

☐ 2  U.S. Government Defendant

☐ 3  Federal Question *(U.S. Government Not a Party)*

☒ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                          *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' | Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | Liability | ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | Liability | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | ☒ 360 Other Personal | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 195 Contract Product Liability | Injury | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 196 Franchise | ☐ 362 Personal Injury - Med. Malpractice | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| | | | ☐ 791 Empl. Ret. Inc. Security Act | | ☐ 895 Freedom of Information Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 220 Foreclosure | ☐ 441 Voting | **Habeas Corpus:** | | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee (Prisoner Petition) | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district *(specify)* ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Diversity

Brief description of cause:
Negligent misrepresentation / legal malpractice

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) PENDING OR CLOSED:
*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE   5/22/2014

SIGNATURE OF ATTORNEY OF RECORD   *L.M. Ross Professional Law Corporation*
*Leonard M. Ross*

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____